**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
April 29, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

**BROOKE ANNE CARTER,**

**Plaintiff,**

**v.**

**COMMONWEALTH OF VIRGINIA DEPARTMENT OF ENVIRONMENTAL QUALITY**

**Defendant.**

**CASE NO.:** 7:26-CV-00361

**JURY TRIAL DEMAND**

## COMPLAINT

COMES NOW, Plaintiff Brooke Anne Carter (hereinafter, "Ms. Carter" or "Plaintiff"), by counsel, and provides this Complaint against the Commonwealth of Virginia Department of Environmental Quality (hereinafter, "DEQ" or "Defendant"). In support of her Complaint, Plaintiff provides the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. § 2000e, *et seq.*

2. Venue is appropriate, as the acts and/or omissions of the DEQ from which the causes of action arise, occurred in Salem, Virginia, which is within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

3. Ms. Carter timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and received a Dismissal and Notice of Rights from the EEOC dated January 31, 2026, attached hereto as **EXHIBIT A**. Ms. Carter files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. FACTUAL ALLEGATIONS

4. For all times relevant, Ms. Carter was a resident of Roanoke County, Virginia.

5. Ms. Carter was employed by the Virginia Department of Environmental Quality ("DEQ") during the course of this matter.

6. DEQ operates in a highly regulated industry that inherently includes working with numerous other local, state, and federal agencies and programs.

7. Paul Jenkins ("Mr. Jenkins") was Ms. Carter's supervisor and served as Air Permit Manager, Blue Ridge Regional Office.

8. Ms. Carter was hired by DEQ in Salem, Virginia on or about January 10, 2022. Ms. Carter is a transgender woman.

9. At the time of her unlawful termination, Ms. Carter worked as a full-time Air Permit Writer / Environmental Specialist 2 and earned an annual salary with benefits.

10. Ms. Carter worked with success and achievement during most of her employment with DEQ. During her employment, she received positive work performance evaluations and never received formal discipline.

11. On February 1, 2023, Ms. Carter informed her direct supervisor that she was transgendered, and made a request for an accommodation, related to her "gender dysphoria." Gender dysphoria is a rare, medically recognized illness that is defined as a marked incongruence between a person's experienced or expressed gender and the one they were assigned at birth. It was previously termed "gender identity disorder." *See De'Lonta v. Johnson*, 708 F.3d 520, 522 (4th Cir. 2013).

12. As part of Ms. Carter's gender transition, Ms. Carter requested, and was approved, to telework full-time until the bathrooms at her designated work location were changed to "unisex" bathrooms, or until October 2023.

13. DEQ's Human Resources Director acknowledged receipt of Ms. Carter's ADA forms for the first time on May 21, 2023, but stated that her request for an accommodation would have to be stalled until she could determine if Ms. Carter's disability was a covered disability under the federal statute. To be certain, at the time of Ms. Carter's request, gender dysphoria was recognized by the United States Court of Appeals for the Fourth Circuit as a defined disability. *Williams v. Kincaid*, 45 F.4th 759, 763 (4th Cir. 2022).

14. Ms. Carter informed the Human Resources Director on or about May 30, 2023, that she was experiencing a high level of stress, and that this stress was being exacerbated by her working environment. Co-workers teased Ms. Carter and ostracized her. Ms. Carter was left out of important meetings and communications essential to her job.

15. On or about June 5, 2023, Ms. Carter met with her supervisor Mr. Jenkins, upper management, as well as the Human Resources Director. Ms. Carter reported wrongdoing in this meeting insofar as she reported:

a. The wrongful denial of her reasonable accommodation request to engage in telework. Plaintiff reported how she had provided proper notice of her disability and fulfilled all duties to properly request an accommodation that was not an undue hardship on her employer. The telework accommodation was reasonable and allowed her to more easily meet the essential functions of her job. Ms. Carter met all the eligibility requirements for an accommodation under federal law. Ms. Carter followed established procedure in requesting the accommodation. It was a violation of federal law to fail to accommodate an eligible employee that followed established

procedure in requesting a reasonable accommodation when the accommodation would not result in an undue hardship to the agency.

i. *See*, 29 U.S.C. § 794(d), 29 C.F.R. § 1630.9(a). 42 U.S.C. § 12112(b)(5)(A) (all providing that an employer must accommodate an eligible employee if the accommodation request does not generate an undue hardship.)

b. Differential treatment on the basis of membership within a protected class such as how others not within her protected class received accommodations. Coworkers routinely received the granting of accommodations. Ms. Carter did not have access to personnel files of other coworkers, but it was known that management provided reasonable accommodations.

c. The consistent use of her "dead name", i.e., the name used by Ms. Carter prior to her transition. Ms. Carter repeatedly requested that she be referred to as "Brooke" but some coworkers, such as coworker Anita Warthal, intentionally refused to use this name. Ms. Carter raised this issue as an issue of discriminatory treatment at the workplace.

d. From May 8, 2023, through June 5, 2023, Ms. Carter was forced to use male pronouns at work when she had provided notice that she identified as female and used female-associated pronouns. Ms. Carter reported this as discriminatory occurrence at the workplace.

i. *See*, 42 U.S.C. § 2000e-2(a) (providing that it is an unlawful employment practice to create disparate treatment among coworkers on the basis of a protected class).

e. Ms. Carter was required to attend a work trip for in-person training on or about May 10, 2023. Despite Ms. Carter's requests, management required her to attend the trip using her "dead name" and to use male pronouns at the event.

i. *See* 42 U.S.C. § 2000e–2(a) (providing that employers may not knowingly discriminate against employees on the basis of a protected class).

f. The emotional effects of ostracization and discrimination from her coworkers on her health.

g. The emotional effects of discrimination from management by management not considering her accommodation request nor the hostile environment. Ms. Carter reported a wrongful indifference to the harmful environment.

h. The discriminatory effect of workers refusing to speak to Ms. Carter and providing a strange "silent treatment".

i. The wrongfulness of working in this environment when she is owed an accommodation under federal law.

j. The wrongfulness of working in a discriminatory environment under federal law.

16. Ms. Carter reported wrongdoing in good faith throughout her employment. All of Ms. Carter's reports were made and published to the chain of command above her and to agency designates in good faith. When Ms. Carter reported the issues affecting her at the workplace listed above, she was opposing practices made unlawful by Title VII. These were claims of discrimination.

17. The hostility from co-workers sharply increased in June of 2023. Coworkers teased Ms. Carter on the basis of her membership within a protected class, ostracized her from meetings and communications, refused to call her "Brooker Carter," with one employee refusing to speak to her at any time despite work demanding verbal communication on occasions.

18. At the same time, Mr. Jenkins subjected Ms. Carter's work to increased scrutiny and began holding her to noticeably more stringent standards than he had prior to her reporting wrongdoing.

19. Throughout the summer of 2023, Mr. Jenkins intentionally gave Ms. Carter difficult tasks with inadequate training or resources and then harshly critiqued the work that came from said request. Prior to reporting wrongdoing, Mr. Jenkins held Ms. Carter's work in high regard. After Ms. Carter reported wrongdoing, Mr. Jenkins appeared to be setting Ms. Carter up for failure.

20. On or about August 1, 2023, Ms. Carter met with the Human Resources Director and reiterated her earlier reports of wrongdoing and informed the Director that the instances of wrongdoing had increased in frequency and severity. In this meeting, Ms. Carter recounted how she had previously reached an agreement to telework as a temporary accommodation. Ms. Carter reported that she should be allowed to utilize the agreement to telework. Ms. Carter was told in this meeting that the agreement did not exist and had never existed. When Ms. Carter produced the agreement, she was told it was invalid and it should never have been granted.

21. In this August 1, 2023, meeting, Ms. Carter repeated reports of discrimination she had made earlier such as the wrongful denial of an accommodation under the law and the continued discriminatory treatment from coworkers that had not ceased from earlier in the summer.

22. On or about September 12, 2023, Ms. Carter met with Mr. Jenkins and a member of Human Resources. In this meeting Ms. Carter reported the need for an accommodation and the wrongfulness of the denial of her request for an accommodation.

23. From the Fall of 2023 through early 2024, hostility at the workplace increased. Mr. Jenkins directed Ms. Carter to work disproportionate deadlines and assignments that were manufactured for Ms. Carter's failure.

24. On February 9, 2024, Mr. Jenkins gave Ms. Carter a written "Due Process Memo" falsely accusing her of having failed to comply with agency policies and procedures.

25. Due to her health, Ms. Carter submitted medical leave requests and other associated documentation in the latter half of 2023 in accordance with agency policies and procedures.

26. Defendants intentionally never processed any of Ms. Carter's leave requests.

27. Defendants wrongfully terminated Ms. Carter's employment on or about February 22, 2024.

28. DEQ has discriminated against Ms. Carter by treating her differently from, and less preferably than, similarly situated employees, and subjected her to discrimination, hostile work environment, and retaliation on the basis of her sex. DEQ's policies, practices, and/or procedures have created a discriminatory, hostile, and retaliatory work environment and have resulted in a disparate impact on Ms. Carter with respect to the terms and conditions of her employment and have caused and/or contributed to discrimination, hostile work environment, retaliation and loss of employment based upon sex, in violation of federal law. DEQ has violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

**COUNT I: SEX DISCRIMINATION**
**PURSUANT TO TITLE VII**

29. Ms. Carter incorporates by reference herein the preceding paragraphs of this Complaint.

30. Ms. Carter is a female and is protected from sex discrimination by Title VII.

31. DEQ is an employer within the meaning of § 701(b) of Title VII, 42 U.S.C. § 2000e(b).

32. DEQ has discriminated against Ms. Carter by treating her differently from, and less preferably than, similarly situated employees and subjected her to discriminatory treatment on the basis of her sex.

33. DEQ policies, practices, and/or procedures have had a disparate impact on Ms. Carter with respect to the terms and conditions of her employment.

34. DEQ violated federal law by permitting a work environment to exist that was discriminatory to Ms. Carter.

35. DEQ would not have subjected Ms. Carter to discriminatory actions but for Ms. Carter's sex. Alternatively, Ms. Carter's sex was a motivating factor in DEQ's actions.

36. During her employment with DEQ, Ms. Carter was subjected to continuing discriminatory treatment because of her sex, which culminated in DEQ'S refusal to address disparate and discriminatory and hostile treatment in the work place and, ultimately, Ms. Carter's discharge from employment.

37. Because the actions of DEQ supervisory employees were taken within the scope of their employment, DEQ is responsible for their actions based upon the doctrine of *respondeat superior.*

38. As a direct and proximate result of the actions of DEQ, Ms. Carter has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

39. At all times material hereto, DEQ engaged in discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Carter so as to support an award of punitive damages.

40. The above-described acts by DEQ constitute discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

**COUNT II: RETALIATION**
**PURSUANT TO TITLE VII**

41. Ms. Carter incorporates by reference herein the preceding paragraphs of this Complaint.

42. Defendant retaliated against Plaintiff and terminated her employment, for complaining about sex-based discrimination and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

43. DEQ has discriminated against Ms. Carter by treating her differently from, and less preferably than, similarly situated employees and subjected her to discriminatory treatment on the basis of her sex.

44. DEQ's conduct (and others) was based upon Ms. Carter's sex in that they would not have behaved as they did towards her had she not been a transgender female.

45. DEQ created a culture of sex-based discrimination, repression, hostility, inability for advancement, and retaliation.

46. DEQ violated federal law by permitting a work environment to exist that was discriminatory and hostile to Ms. Carter.

47. DEQ has an obligation to maintain a work environment that is not charged with sexual discrimination and harassment, and hostile to Ms. Carter. However, DEQ has permitted a work environment to exist that is discriminatory, retaliatory, hostile, and offensive to Ms. Carter.

48. DEQ knew, or should have known, of the retaliatory and hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment and hostility. Because the actions of DEQ employees were taken within the scope of their employment, DEQ is responsible for their actions based upon the doctrine of *respondeat superior*.

49. As a result of Defendant's retaliatory acts, Ms. Carter has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

50. Defendant acted willfully toward Plaintiff with actual malice or with reckless disregard for the protected rights of Plaintiff so as to support an award of punitive damages.

51. The above-described acts by DEQ constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

**WHEREFORE**, Plaintiff Brooke Anne Carter prays for judgment against the Commonwealth of Virginia Department of Environmental Quality for injunctive relief, equitable relief, reinstatement, compensatory damages, back pay, front pay, full reinstatement of fringe benefits and seniority rights, together with prejudgment and post judgment interest and attorneys' fees and costs, and for such other and further relief as may be just and equitable.

A TRIAL BY JURY ON ALL THINGS TRIABLE IS HEREBY REQUESTED.

Respectfully Submitted,

**BROOKE ANNE CARTER**

By: ______________________________

Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
*Counsel for Plaintiff*

Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA 24018
Tel: 540-283-0802
thomas@vaemployment.law